✓ FILED ___ ENTERED
___ LOGGED ___ RECEIVED
4:18 pm, Mar 18 2025
AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY ___KM___ Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| v. | * | No. 1:25-mj-611 |
| **WILSON MEJIAS-MEJIAS,** | * | |
| Defendant. | * | |

\* \* \*

## MEMORANDUM OPINION

On March 14, 2025, the Court held an initial appearance in this matter originating in the Southern District of Texas. The Complaint alleges that Wilson Mejias-Mejias unlawfully entered the country in late 2023, in violation of 8 U.S.C. § 1325. During the initial appearance, the government announced its intention to seek detention pending trial in this case. When asked whether they sought to hold a detention hearing in this district or consent to detention, defense counsel challenged the government's basis for seeking detention under the Bail Reform Act. *See* 18 U.S.C. § 3142(f). The Court then heard argument from the parties. At the hearing's conclusion, the Court ordered release, finding that the government did not satisfy its burden on the threshold issue of whether it could seek detention on the basis it articulated. This opinion summarizes the reasons stated on the record.

Under the Bail Reform Act, pretrial detention motions proceed through a two-step process: first, there must be a basis to move for a detention hearing; second, if a hearing is permissible, the court must find detention is appropriate based on risks of flight or danger to the community that cannot be addressed by a combination of release conditions. *See United States v. Hernandez-Cerrato*, No. MJM-23-419, 2024 WL 1532748, at *3 (D. Md. Apr. 9, 2024) (noting the Bail Reform Act's "two-step process for detaining an individual before trial")

(internal quotation marks and citations omitted); *accord United States v. White*, No. 21-mj-4070, 2021 WL 2155441, at *3-6 (M.D. Tenn. May 27, 2021).  On the threshold issue of whether a detention hearing may occur, the Bail Reform Act permits motions for pretrial detention based on certain types of offenses.  *See* 18 U.S.C. § 3142(f)(1).  Apart from those enumerated offenses, the Bail Reform Act permits the government (and the Court) to invoke a detention hearing where a case involves "(A) a serious risk that such person will flee; or (B) a serious risk that such person will" obstruct justice or tamper with a witness or juror (or attempt to do so).  18 U.S.C. § 3142(f)(2).  Only after the government satisfies one of these provisions, the Court proceeds to whether to order release, the default conclusion, or detention based on the absence of conditions or combination of conditions that can reasonably assure the accused's appearance as required or the safety of the community.  18 U.S.C. § 3142(g).  At the hearing, the Court noted that the pending charge here is illegal entry, a misdemeanor that falls outside of subsection (f)(1)'s enumerated offenses.  The government then asserted a serious risk of flight, pursuant to Section 3142(f)(2)(A).

The parties proceeded by proffer, as is common in detention hearings in this District. *See United States v. Vane*, 117 F.4th 244, 250-51 (4th Cir. 2024); *United States v. Hammond*, 44 F. Supp. 2d 743, 745 (D. Md. 1999).  The Court heard dueling narratives regarding the flight risk here.  On one side, the government cited to the existence of an ICE detainer that may subject the defendant to removal if released; the defendant missed three appointments with ICE officials (at least two of which were scheduled to occur in Chicago); and the government's determination that the defendant is affiliated with a Venezuelan gang or gang members.  On the other side, defense counsel claimed that the defendant has lived in the Baltimore area since late 2023 (shortly after he entered the country); obtained seasonal employment at stadium vendors for

local professional sports teams and as a Door Dash driver; maintained phone contact with ICE; and petitioned for asylum, with a hearing date scheduled for April 2027.  The government disputed the assertion regarding phone contact with ICE officials.

On balance, the Court does not find that the government proved a "serious risk" of flight.  In doing so, the Court wrestles with three legal issues it raised or addressed at the hearing on short notice.[1]

*Serious risk of flight*

The first issue is what constitutes a "serious risk of flight."  The Court focused its questions and, to a greater extent, its decision on this question of what "serious" means, given that the adjective does not appear in other parts of the Bail Reform Act.  *Compare* 18 U.S.C. § 3142(g) (permitting detention to be ordered based on a risk of nonappearance).  As one court observed:

> Congress's deliberate use of the adjective "serious" to modify "risk of flight" further heightens the threshold, as "serious" is commonly understood to mean "weighty; important; . . . [or] potentially resulting in death or other severe consequences."  Thus, a plain reading of § 3142(f)(2)(A) indicates that demonstrating a "serious risk" of flight requires more than speculation, negligence, or logistical challenges.  If "serious" is understood to modify "risk," then a "serious risk that [a defendant] will flee" must entail more than mere uncertainty or the possibility of nonappearance.  Instead, it demands a substantial showing that the defendant will take deliberate, voluntary action to flee to evade judicial oversight.

*United States v. Rodriguez-Fuentes*, 2025 WL 711955, at *2 (E.D. Ky. Mar. 5, 2025) (citations omitted) (alteration in original).  The Court finds this explanation persuasive and concludes that

---

[1] The Court appreciates counsel's efforts to collect information and speak to the relevant issues with relatively little preparation, as this hearing occurred hours after the defendant's arrest and this case originates in another district.  Therefore, the issues raised did not have the benefit of advance briefing or extensive investigation into the relevant considerations.  Counsel performed ably with the information available under the circumstances.

Section 3142(f)(2)(A) requires more of the government than Section 3142(g)'s "risk of nonappearance" showing that is more often addressed in detention hearings. That is, the government must show *flight* rather than mere nonappearance in court, as well as that the risk not only exists but is a *serious* one. *See id.* at *3 (collecting authority, including from this District, agreeing that "'serious risk of flight' [differs] from the broader concept of 'risk of nonappearance'"). In considering the parties' arguments, the Court considers incentive to flee, ability to flee, prior noncompliance with court orders, ties to the jurisdiction, or other matters that bear on the question of flight. *See id.* (identifying these factors as a non-exhaustive list); *United States v. Giordano*, 370 F. Supp. 2d 1256, 1264 (S.D. Fla. 2005) ("Relevant factors that support a serious risk [of flight] finding include the use of a number of aliases, unstable residential ties to a community, efforts to avoid arrest, or hidden assets.").

### *Burden of proof*

Next is what standard of proof applies to the government, which bears the burden on the detention issue absent an alleged violation of an existing release order. As stated at the hearing, the Court applies a preponderance of evidence standard to the Section 3142(f)(2)(A) analysis. While the parties debated whether this was a preponderance or clear and convincing standard, jurists in this and other courts have deemed preponderance the appropriate standard for this analysis. *See United States v. DeBeir*, 16 F. Supp. 2d 592, 595 (D. Md. 1998); *White*, 2021 WL 2155441, at *7 (citing *United States v. Freidman*, 837 F.2d 48, 49 (2d Cir. 1988) and *United States v. Salgado*, No. 20-53, 2020 WL 4747931, at *3 (D.R.I. Aug. 17, 2020)). A preponderance standard is also consistent with the analysis under Section 3142(g), where a court may order detention if the government demonstrates risk of nonappearance by a preponderance. *See United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001).

*The impact, if any, of an ICE detainer*

The third overarching question concerns the government's contention that the existence of an ICE detainer is dispositive. The Court disagrees. Instead, the Court is persuaded by the analysis of other courts who found that the Bail Reform Act considers flight as an act of volition; non-appearance caused by the action of another entity—including a different government agency—does not suggest that the accused chose to flee and not appear in court. *See United States v. Ailon-Ailon*, 875 F.3d 1334, 1337-39 (10th Cir. 2017); *United States v. Alejo*, No. 18-mj-42, 2018 WL 3715764, at *4 (W.D. Va. Aug. 3, 2018); *United States v. Leon-Silva*, No. 22-mj-355, 2023 WL 2795810, at *2 (E.D. Va. Apr. 5, 2023) (noting, as part of a § 3142(g) assessment of whether detention is warranted, that "the existence of a [pending ICE] detainer is not dispositive" of the flight analysis). Adopting the government's position would be an inappropriate act of rewriting the Bail Reform Act to provide for a categorical denial of bail where Congress elected not to do so. *United States v. Santos-Flores*, 794 F.3d 1088, 1091-92 (9th Cir. 2015). Therefore, "in the context of § 3142(f)(2), the risk that a defendant will 'flee' does not include the risk that ICE will involuntarily remove the defendant." *Ailon-Ailon*, 875 F.3d at 1339.[2] But the existence of a pending detainer and forced removal may be relevant to the flight risk determination to the extent that the potential removal provides incentive to an

---

[2] The Assistant United States Attorney expressed concern that a release order would likely result in ICE officials taking the defendant into custody, thereby preventing his appearance at future court proceedings. Government counsel may be correct, and the Court understands the logic of this argument. But any conflict between law enforcement agency prerogatives "is a matter for the Executive Branch to resolve internally," not for the courts to resolve within the confines of the Bail Reform Act. *Ailon-Ailon*, 875 F.3d at 1339; *see also United States v. Tapia*, 924 F. Supp. 2d 1093, 1098 (D.S.D. 2013) (describing this circumstance as "one arm of the Executive, wishing to prosecute this defendant criminally, is arguing that he is likely to flee based on the possible actions of a different arm of the same Executive[.]"); *United States v. Herrera-Quino*, No. 23-mj-16105, at *6 (D.N.J. Feb. 1, 2024) ("If the Executive Branch wants to prioritize deportation over prosecution, that is its prerogative.").

individual able to flee. *See Rodriguez-Fuentes*, 2025 WL 711955, at *6.[3]

> *Weighing the relevant considerations as to flight*

Having set those ground rules, the Court proceeds to weighing the relevant considerations based on the parties' competing presentations on the defendant's circumstances. Several facts about the defendant's circumstance appear uncontested, and the Court addresses those first. The defendant entered the Southern District of Texas about a year and a half ago and, per defense counsel, has been in Baltimore almost the entire time since. The relatively brief duration of his residence strikes the Court different from cases where individuals have lived in communities (or the country) for several years without incident. In that way, it may suggest more of a flight risk than, for example, an individual who has lived in a community for a decade or more and whose children have attended local schools for years. But the Court is mindful that "*every* case involves some degree of flight risk, and that the Bail Reform Act nevertheless favors release," so the question is whether that duration suggests a <u>serious</u> risk of flight. *White*, 2021 WL 2155441, at *12 (emphasis in original). The Court is unaware of authority suggesting that a brief residency, with less established ties to the community, is dispositive. Therefore, this must be weighed in the context of other considerations.

Absent are indicia of prior noncompliance or avoidance of criminal proceedings or judicial supervision. Such information often establishes a serious risk of flight. *See United States v. Cook*, 87 F.4th 920, 925 (8th Cir. 2023) (finding, *inter alia*, that abscondment from probation for three years and felony charges for failure to appear weighed heavily in favor of finding a "serious risk" under § 3142(f)(2)(A)); *Rodriguez-Fuentes*, 2025 WL 711955, at *6

---

[3] Some courts have construed the existence of an ICE detainer as indicative of a voluntary risk where the defendant "expressly desires or seeks out deportation." *Herrera-Quino*, 2024 WL 376677, at *4 & n.4. But there is no indication that is the case here.

6

(finding that a criminal record—a manslaughter conviction resulting in deportation before illegal re-entry and new state charges for violent crimes—demonstrated lack of trustworthiness or reliability supporting a serious risk of flight); *Santos-Flores*, 794 F.3d at 1092 (affirming detention order based on risk of flight where defendant violated supervised release, unlawfully re-entered the country multiple times, previously failed to appear in court, and possessed fraudulent identity documents).  But the defendant has no other pending criminal charges and no prior failures to appear when ordered by a court.  His only apparent interaction with a court or criminal charges appears to be this case.  Nor is there any indicia of fraud or misappropriation of other identities, a fact that might indicate a slipperiness relevant to a flight risk.

No information available to the Court suggests the defendant has means to flee.  To the contrary, government counsel expressed concern about his financial means and ability to appear for proceedings in the Southern District of Texas.  If the government questions a person's ability to travel to another state halfway across the country, the Court can hardly conclude that the same person has the means to voluntarily flee judicial oversight, at least to the extent that the risk of flight is "serious."  Other than the basic fact that the defendant is alleged to be a foreign national, and thus likely has connections to his country of birth, no evidence or proffer demonstrates an ability to flee.  *See United States v. Pavon-Andino*, No. 25-mj-22, 2025 WL 446143, at *3 (D. Col. Feb. 10, 2025) (finding the "ability to flee" consideration "neutral" in the context of a "serious risk of flight" analysis where, "[o]ther than his general ties to Honduras and the family members that live there, there is no evidence to support the defendant's specific ability to flee"); *White*, 2021 WL 2155441, at *14 ("The fact that Defendant lacks community ties specifically in this district may be probative of his risk of unintentional non-appearance in this district, but it is not very probative of whether he would intentionally not show up here and instead choose

the path of a fugitive."). Furthermore, the physical and economic challenges cited by the government speak to nonappearance, not the concept of flight that § 3142(f)(2)(A) demands. *See White*, 2021 WL 2155441, at *14 ("[T]he Government (and Court) cannot rely on the notion that Defendant residing pre-trial in Houston pending trial would pose a risk of Defendant's *non-intentional* failure to appear for court in Nashville. This is important because the sheer distance between the two cities indeed increases the risk of unintentional non-appearance (due to, for example, lack of funds or wherewithal in travel arrangements); this distance could help the Government on the risk of non-appearance if such risk were at issue here—but the risk at issue here is risk of *flight*.") (emphasis in original).

There is no dispute that he is charged with a federal misdemeanor that carries a maximum incarceration of six months. On those terms, the charges are hardly an incentive to flee. *See Pavon-Andino*, 2025 WL 446143, at *3 (severity of punishment did not support serious risk of flight where the potential punishment was "minimal and . . . consistent with the punishment associated with a misdemeanor offense"); *cf. United States v. Lawal*, No. SAG-20-369, 2021 WL 1599249, at *2 (D. Md. Apr. 23, 2021) (describing "a lengthy federal sentence" as "a powerful incentive to flee"). The true flight incentive flowing from the nature of the charges, if any, lies in the collateral consequence of removal from the United States, pursuant to either a conviction in this case or action on the pending ICE detainer regardless of the criminal prosecution.

Now to facts and representations subject to some dispute. The government paints a picture of willful avoidance, based on missed appointments and an alleged lack of regular contact with ICE. Defense counsel counters with claims that the defendant maintained contact with ICE via phone call or a phone app, which the government disputes. The Court finds

immaterial the dispute regarding his efforts to comply with ICE directives or otherwise maintain contact with ICE officials.  The bottom line, from the Court's perspective, is that there is no attempt to flee this or any other jurisdiction for the purpose of avoiding proceedings.  It is not clear to the Court that the defendant received notice of at least two of those appointments with ICE, as they were scheduled to occur in Chicago at a time defense counsel represented the defendant lived in Baltimore.  In that case, there may not be any specific intent or design to not appear at an ICE office on those dates.  The government counters that observation by noting that the defendant had an obligation to maintain a current address with ICE—and, by implication, intentionally avoided ICE officials.  The government may be correct that the defendant had such a duty and should have made better efforts to maintain contact with ICE officials.  Notwithstanding that defense counsel asserts the defendant did so, the scene painted by the government does not rise, in the Court's opinion, to a suggestion he would flee the Court's jurisdiction.  He was aware that ICE knew of his presence in the country; by all accounts, he appears to have operated under his legal name; there are no indications of use of "a number of aliases"; he maintained a residence in Baltimore, obtained employment in and around the area, and, per the government, registered a vehicle in his name and at the Baltimore City address where he was arrested.  These actions do not appear consistent with someone taking efforts to flee a government entity aware of his presence after his alleged admission to that same government that he entered the country without proper authorization.  Furthermore, the existence of an asylum petition and scheduled hearing date—facts the government did not dispute—weigh against any suggestion of serious intent to flee.

     In the end, the common hallmarks of serious flight risks do not appear in this case.  The government would have an ICE detainer and missed administrative appointments qualify as a

"serious" risk of flight. That the defendant poses some risk of flight is not enough. Nor is the potential—or, in government counsel's words at the hearing, an almost certainty—that the defendant would enter ICE custody if released by the Court. The Court must apply the Bail Reform Act, as written, to the circumstances before it. In this case, which raises the threshold issue of whether a detention hearing can occur at all, the Court has done so to the best of its ability with the information before it. In doing so, it concludes that the government may not seek detention in this case.[4] For those reasons, the Court entered a pretrial order of release subject to conditions announced in open court and identified in that order.

Date: March 18, 2025

                                               /s/
                                        Charles D. Austin
                                        United States Magistrate Judge

---

[4] The government also, at the Court's invitation for the sake of efficiency, provided information it believed supported a finding that the defendant presented a danger to the community that could not be addressed by a combination of conditions. But because the Court finds that the government did not satisfy the § 3142(f)(2)(A) burden to obtain a detention hearing, it takes no position on the question of danger, including the alleged connection to a violent gang. The only observation the Court makes on those allegations is that the general information presented does not aid the government's argument on "serious risk of flight" here.